CV 13        1538    DEARIE, J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GOLD, M.J.

-------------------------------------------------------------------- x

KIMON ROBINSON

                               Plaintiff,    **COMPLAINT AND**

-against-                       **JURY DEMAND**

THE CITY OF NEW YORK, DETECTIVE
CHRISTOPHER GREINER SHIELD #1425 AND JOHN    **ECF CASE**
DOE #1-4,

                            Defendants.

-------------------------------------------------------------------- x

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief for the violation of her rights secured by 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of New York.

2. The claims arise from a January 19, 2012 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiff to, among other things, false arrest, assault and trespass.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action is brought pursuant to 28 U.S.C. §1331, 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

5. The amount in controversy exceeds $75,000.00 excluding interest and costs.

6. Venue is laid within the United States District Court for the Eastern District of New York in that Defendant City of New York is located within, and the events occurred within, the

boundaries of the Eastern District of New York.

## PARTIES

7. Plaintiff at all times here relevant resided in the Red Hook section of Brooklyn, City and State of New York.

8. The City of New York is a municipal corporation organized under the laws of the State of New York.

9. All other individual defendants ("the officers"), including John Doe ##1-4, individuals whose names are currently unknown to plaintiff, are employees of the NYPD, and are sued in their individual capacities.

10. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

11. Within 90 days of the events giving rise to this claim, plaintiff filed written notice of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of that notice, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

12. Ms. Robinson is a 32 year old woman with no criminal record. She has lived with her minor son in the Red Hook section of Brooklyn for more than four years. At approximately 4:30AM on January 19, 2012, plaintiff was awoken by the sound of many officers forcefully entering her apartment. She opened her bedroom door to several officers, including Detective Greiner, yelling at her to get down on the floor. Frightened and confused, she immediately complied with the officers' orders. She laid face down on the floor with her hands behind her

head. Ms. Robinson was naked from the waist down.

13. Eventually, the officers picked Ms. Robinson up off the floor, handed her clothing to put on and handcuffed her. She was placed in a chair in the living room area of the apartment and berated by several officers regarding who else lived in the home. Ms. Robinson repeatedly explained that no one, beside herself and her son, live in the apartment.

14. Approximately thirty minutes later, Ms. Robinson was placed inside a NYPD van parked outside. Over the next several hours, she remained handcuffed in the rear of the van while the officers drove around making other arrests. At least three other men were arrested and put in the van with Ms. Robinson. The officers did bring Ms. Robinson to the 76th precinct but only to allow her to use the bathroom before putting her back inside the van. Ms. Robinson was extremely upset and unaware of why she had been arrested.

15. On January 20, more than thirty hours after her arrest, Ms. Robinson was arraigned on a complaint charging only the violation of marijuana possession. The matter was immediately sealed by the criminal court judge.

16. Ms. Robinson returned to her home that same day to find the apartment had been completely destroyed by the officers during their illegal search. All the cabinets had been emptied and boxes of food torn open and strewn throughout the kitchen. The refrigerator was left open so all the contents had to be thrown away. All of her clothing was torn from the hangers in her closet and tossed on the floor. Pictures were taken off the shelves and frames broken.

17. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical

presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff, and agreed, shortly after the incident, not to report each others' illegal actions and to fabricate a story and falsely charge plaintiff with offenses, to justify the injuries.

18. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

19. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

   a.   Violation of her rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure;

   b.   Violation of her right to Due Process of Law under the Fourteenth Amendment to the United Stated Constitution;

   c.   Violation of her New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

   d.   Violation of her New York State Constitutional right under Article 1, Section 6 to Due Process of Law;

   e.   Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

   f.   Loss of liberty;

   g.   Damage to property.

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983)

20. The above paragraphs are here incorporated by reference.

21. Defendants acted under color of law and conspired to deprive plaintiff of her civil, constitutional and statutory rights to be free from unreasonable search and seizure and to due process of law pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, and are liable to plaintiff under 42 U.S.C. §1983.

22. Defendants falsely arrested plaintiff and failed to intervene in each other's obviously illegal actions.

23. Plaintiff has been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
(MUNICIPAL AND SUPERVISORY LIABILITY)

24. The above paragraphs are here incorporated by reference.

25. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

26. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

27. The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers use excessive force, unlawfully search and

seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

28. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

29. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer.

30. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and

seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

31. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal. Furthermore, although the City has been on notice, through plaintiff's complaints to the CCRB from the first day of the incidents complained of, the City has failed to remedy the wrong.

32. Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

### THIRD CAUSE OF ACTION
(CONSTITUTIONAL TORT)

33. All preceding paragraphs are here incorporated by reference.

34. Defendants, acting under color of law, violated plaintiff's rights pursuant to §§6 and 12 of the New York State Constitution.

35. A damages remedy here is necessary to effectuate the purposes of §§6 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

## FOURTH CAUSE OF ACTION
(ASSAULT)

36. The above paragraphs are here incorporated by reference.

37. Defendants made plaintiff fear for her physical well-being and safety and placed her in apprehension of immediate harmful and/or offensive touching.

38. Plaintiff was damaged by defendants' assault.

## FIFTH CAUSE OF ACTION
(FALSE ARREST AND FALSE IMPRISONMENT)

39. The above paragraphs are here incorporated by reference.

40. Defendants subjected plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

41. Defendants intended to confine plaintiff.

42. Plaintiff was conscious of the confinement and did not consent to it.

43. As a result of the false arrest, imprisonment, and deprivation of liberty, plaintiff was damaged.

## SIXTH CAUSE OF ACTION
(TRESPASS)

44. All the preceding paragraphs are here incorporated by reference.

45. On the date of the incident, plaintiff resided at 167 Bush St. Defendants intentionally and forcefully entered that location without plaintiff's consent.

46. As a result of this illegal trespass, plaintiff was damaged.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

8

B.  Awarding plaintiff punitive damages in an amount to be determined by a jury;

C.  Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D.  Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  Brooklyn, New York
March 20, 2013

TO: New York City
Corporation Counsel Office
100 Church Street, 4th floor
New York, NY 10007

Detective Christopher Greiner
Narcotics Bureau Brooklyn South
1 Police Plz.
New York, NY 10013

Very truly yours,

Stoll, Glickman & Bellina, LLP
By: Nicole Bellina
Attorney for Plaintiff
475 Atlantic Ave. Fl. 3
Brooklyn, NY 11217
(718) 852-3710 x103